UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------------- x
MATTHIESEN LIMITED,                                                  :
                                                                     : Civil Action No.: 25-CV-7975
    Plaintiff,                                   :
                                                                     :
                                                                     :
 -against-                                                      :
                                                                     : COMPLAINT
                                                                     :
THOMAS AUSTIN DOYLE, SHALVA                                          : JURY TRIAL DEMANDED
SARUKHANISHVILI, JILL NEWHOUSE LLC, and                              :
JON LANDAU,                                                          :
                                                                     :
    Defendants.                                  :
                                                                     :
-------------------------------------------------------------------- x

Plaintiff Matthiesen Limited, dba The Matthiesen Gallery, by its attorneys Schindler Cohen & Hochman LLP, for its complaint (the "Complaint") against Defendants Thomas Austin Doyle ("Doyle"), Shalva Sarukhanishvili ("Sarukhanishvili"), Jill Newhouse LLC ("Newhouse"), and Jon Landau ("Landau") (collectively, "Defendants"), alleges as follows as to matters within its own knowledge and on information and belief as to all other matters:

## NATURE OF THE ACTION

1.      This dispute concerns the painting "Mother and Child on a Hammock" by Gustave Courbet (c. 1844) (the "Painting").

2.      Matthiesen Limited is the legal owner of the Painting but no longer has possession of the Painting due to the fraud and deception of Doyle and Sarukhanishvili.

3.      Doyle embarked on a multi-year project to defraud Patrick Matthiesen, in his role as director of Matthiesen Limited, about his identity, telling Plaintiff that he was an experienced and wealthy art world player.  Ultimately, Doyle tricked Plaintiff into delivering the Painting to him.  He then concocted a web of lies to convince Plaintiff that the Painting was lawfully sold and that payment for it would soon be made to Plaintiff.  When, after months of persistent follow-up, Plaintiff realized Doyle had been lying, Doyle confessed his fraudulent scheme in writing and disappeared.

4.      Specifically, Doyle informed Plaintiff that he had a buyer for the Painting for $550,000 and would broker the sale on Plaintiff's behalf without taking any commission.  This representation was false.  Doyle made the representation to induce Plaintiff to issue an invoice—as requested by Doyle—and delay any efforts by Plaintiff to get the Painting back.

5. Unbeknownst to Plaintiff, Doyle had the Painting delivered to his business partner Sarukhanishvili. Upon information and belief, Sarukhanishvili, lacking authorization or the legal right to do so, "consigned" or "sold" the Painting to Newhouse and received $115,000.

6. Newhouse is an active participant in the art market who knew, or should have known, that Matthiesen Limited had been offering the Painting for $650,000 or more for several years. Despite this, Newhouse nearly simultaneously "sold" the Painting to Landau for $125,000 after receiving it from Sarukhanishvili.

7. Landau knew or should have known that Newhouse lacked the ability to pass good title to the Painting, because Landau previously viewed the Painting multiple times at multiple locations other than with Newhouse. Each time he was aware that its retail price was $650,000 or more. Indeed, Landau viewed the Painting, which he knew was owned by Matthiesen Limited, when it was being offered for $650,000 mere months before his "purchase" of the same work from Newhouse at a drastically lower price. Landau disregarded the glaring red flags of the Painting's precipitous drop in price and its unexplained new seller.

8. Upon information and belief, Doyle and Sarukhanishvili collectively received $115,000 from Newhouse. This completed the fraud conceived of and executed by Doyle and Sarukhanishvili. The Painting is in the possession of Landau, who refuses to return it to Plaintiff. Plaintiff has received no compensation for the Painting and brings this action to recover the Painting from Landau as well as for damages against Doyle, Sarukhanishvili, Newhouse, and Landau.

**PARTIES, JURISDICTION, AND VENUE**

9. Plaintiff Matthiesen Limited, d/b/a The Matthiesen Gallery,[1] is a limited liability company in the U.K. with offices at 7/8 Mason's Yard, Duke Street, St. James's, London SW1Y 6BU and is the owner of the Painting.

10. Upon information and belief, Defendant Thomas Austin Doyle is a resident of New York.

11. Upon information and belief, Defendant Shalva Sarukhanishvili is a resident of New York.

12. Upon information and belief, Jill Newhouse LLC is registered in New York with its principal place of business in New York.

13. Upon information and belief, Defendant Jon Landau is a resident of New York.

14. This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1332 because there is complete diversity of citizenship between the Plaintiff and the Defendants hereto and the amount in controversy exceeds $75,000 exclusive of interest and costs.

15. Venue lies in this District pursuant to 28 U.S.C. § 1391 because at least one of the Defendants resides within this judicial district and a substantial part of the events giving rise to the claims occurred within this judicial district.

16. There is a justiciable, actual, real, and substantial controversy between Plaintiff and Defendants.

---

[1] "Matthiesen Gallery" is a registered trading name of Matthiesen Limited. Plaintiff uses both names interchangeably when conducting business.

3

# FACTS

I. **Plaintiff Purchases and Exhibits the Painting**

17. In August 2015, Plaintiff, along with a partner, purchased the Painting from an auction house in France.[2] The next year, Plaintiff had the Painting authenticated and restored and published a hardback catalogue wholly dedicated to the Painting. Plaintiff also confirmed with the Art Loss Register that the Painting was not listed in its records as being lost or stolen.

18. In March 2017, Plaintiff exhibited the Painting at the art fair TEFAF Maastricht in the Netherlands at a retail price of £600,000, the equivalent of $740,000 at the time. In their coverage of the fair, the international art magazine Apollo published an article entitled "Pick of the fair: Matthiesen Gallery" displaying a large photograph of the Painting and describing it as a "gem." Two and half years later in November 2019, Plaintiff sent the Painting on approval to the art fair TEFAF New York on consignment to Trinity Fine Art, where its retail price was $650,000. A few years later, in the spring of 2023, Plaintiff sent the Painting to TEFAF Maastricht on consignment to Nicholas Hall Gallery, where its retail price was £575,000, the equivalent of $701,500 at the time. Landau viewed the Painting during this exhibition.

19. The Painting remained on consignment with Nicholas Hall Gallery following the art fair. It was exhibited at Nicholas Hall Gallery in New York City and offered for sale for $650,000. Upon information and belief, Sarukhanishvili attended several gallery openings at Nicholas Hall Gallery while the Painting was on consignment there and was aware of the Painting's consignment and retail price.

---

[2] Plaintiff subsequently bought out its partner's interest in the Painting and all claims related thereto. Plaintiff is the sole legal owner of the Painting.

4

II. **Defendants Doyle and Sarukhanishvili Build a Relationship of Trust with Plaintiff Based on Lies**

20. Doyle introduced himself to Plaintiff over e-mail in December 2022, claiming that he was involved in the art industry. Over the next two years, he offered to work with Plaintiff to buy and sell works by artists including Donatello, Daumier, Rubens, Goya, Cezanne, Canaletto, and others. He told Plaintiff stories about wealthy collectors looking to buy or sell valuable art and referenced important individuals within the art industry, indicating that he was a regular participant in the industry. Every communication from Doyle to Plaintiff was based on lies.

21. Sarukhanishvili participated in many of these schemes with Doyle, such as by sending photographs or managing the logistics for Plaintiff to view a work in person. In one example, Doyle claimed that he knew of a painting by El Greco for sale in Brussels, Belgium and Sarukhanishvili coordinated a viewing of the work for one of Plaintiff's associates. A sale ultimately did not occur because the condition of the work was not to Plaintiff's standards. However, the work appeared to be an authentic El Greco signed by the artist, indicating to Plaintiff that Doyle and Sarukhanishvili were legitimate actors.

22. Doyle also shared numerous (false) personal stories and details clearly devised to create a relationship of trust and warmth with Plaintiff. Doyle, for example, wrote at length about his (fake) involvement in the war in Ukraine as a government contractor. He used specialized military terms when corresponding with Plaintiff to describe his activities there and in other conflicts throughout the globe. He also wrote to Plaintiff about his family, including his children, on a regular basis.

III. **Doyle and Sarukhanishvili Scheme for the Painting**

23. In July 2024, Doyle offered as a favor to show the Painting to a potential client of Plaintiff's at a New York City townhouse that Doyle claimed to own. Doyle explained that the

5

first floor had previously been rented to a gallery and was already equipped with gallery lighting and picture hangers. Doyle explained that he would ask Sarukhanishvili to move the Painting to the third floor of the townhouse after the viewing for storage for as long as Plaintiff so wished. Plaintiff's potential client ultimately did not purchase the Painting.

24. During this time, Doyle falsely represented to Plaintiff that he had a client by the name of Chris who might be interested in purchasing the Painting after he sold certain real estate assets. Based upon these false representations, Plaintiff ultimately agreed to sell the Painting through Doyle to "Chris" for $550,000. Plaintiff would receive $550,000 from the sale as Doyle said he would not take a commission. In return, Doyle contemplated further deals with Plaintiff and some benefit from facilitating his client's purchase of a painting of high caliber.

25. On August 1, 2024, Doyle falsely represented that Chris had gone into contract on his real estate sale the previous day. Doyle asked Plaintiff to send him an invoice for $550,000, which it did that same day.

26. The next month, Doyle alleged that Chris had not gone into contract on July 31, 2024 as Doyle had previously represented, but instead in the second week of August. Doyle claimed that Chris's real estate sale would likely close within 90 days of the date of signing (the second week of August).

27. However, that same month, September 2024, it became known that Landau had "purchased" the Painting. Plaintiff e-mailed Doyle about this and for the first time, Doyle claimed that Landau and Chris would each own half of the Painting.

6

28.     Doyle continued to lie when he told Plaintiff that Chris provided a 10% non-refundable deposit for the Painting and represented that Chris would pay the remaining balance within ten days of the close of his real estate transaction.[3]

29.     Ultimately, Doyle never sent Plaintiff the deposit, nor the $550,000, even after 90 days had passed.  Plaintiff spent months attempting to recover the funds from Doyle via dozens of e-mail communications but to no avail.  Doyle had an excuse every time Plaintiff sought payment and dodged his requests for in-person or video meetings.

30.     Ultimately, after years of deception, Doyle confessed in an e-mail dated March 4, 2025 that he had betrayed Plaintiff.  He recommended that Plaintiff work with Sarukhanishvili to resolve the matter.  Accordingly, Plaintiff began e-mailing Sarukhanishvili to retrieve the money owed, or the Painting.  Sarukhanishvili shrugged off any requests for assistance and then cut off communications.

### IV.    Plaintiff Learns that Sarukhanishvili "Sold" the Painting to Landau Through Newhouse

31.     Upon information and belief, Landau and Newhouse saw the Painting and were aware of its retail pricing while attending at least some of the TEFAF art fairs in 2017, 2019, and 2023.

32.     As explained above, the Painting remained on consignment with Nicholas Hall Gallery following the 2023 TEFAF Maastricht art fair.  That summer, Landau viewed the Painting at Nicholas Hall Gallery, where it continued to be offered for $650,000.  As he had previously, Landau declined to purchase the Painting at that time.

---

[3]     Doyle made these and other false representations through his associate "Michelle" who sent e-mails from Doyle's e-mail account.  No last name was provided for this individual.  Upon information and belief, the e-mails supposedly originating with "Michelle" were actually from Doyle.

7

33. In the fall of 2024, Plaintiff learned that Landau had ultimately "purchased" the Painting. As explained above, when Plaintiff notified Doyle of this, Doyle for the first time fabricated the lie that Landau and Chris were joint purchasers of the Painting.

34. It was not until around February 2025 that Plaintiff learned the details that Landau "purchased" the Painting from Newhouse in September 2024 for $125,000. Newhouse is owned by Jill Newhouse, a well-known figure within the field of Old Master paintings with decades of experience, particularly with 19th century French art such as the Painting. As someone involved so intimately with the market for Old Master paintings, she would have known the fair market value for the Painting as a work by the famed artist Gustave Courbet was much higher than $125,000 and that it had been on the market for years at a much higher price. As noted above, in their coverage of TEFAF Maastricht 2017, the international art magazine Apollo designated Plaintiff the "[p]ick of the fair" and displayed a large photograph of the Painting, calling it a "gem."

35. Plaintiff wrote to Newhouse, informing it of Doyle's and Sarukhanishvili's fraudulent scheme and that legal ownership of the Painting still resided with Plaintiff. Newhouse responded that she had received the Painting from Sarukhanishvili in August 2024. Upon information and belief, Sarukhanishvili received $115,000 and Newhouse received a $10,000 commission. According to Newhouse, Sarukhanishvili represented that Plaintiff had previously sold the Painting to a purchaser in Greenwich, Connecticut in 2019. Newhouse passed along this false provenance to the Art Loss Register. Sarukhanishvili knew that this representation was false and Newhouse should have too. Allegedly relying upon this information, despite the Painting having been on public display at multiple art fairs and Nicholas Hall Gallery starting in 2023, Newhouse "sold" the Painting to Landau.

8

36. Upon information and belief, Landau knew or should have known that Newhouse had neither good title to the Painting, nor the authority to sell it. Upon information and belief, he had viewed the Painting on multiple occasions when it was being sold for $650,000 or much more. He viewed the Painting at Nicholas Hall Gallery and was aware of its retail price of $650,000 mere months before he "purchased" it from Newhouse for only $125,000.

37. On June 13, 2025, Plaintiff contacted Landau through counsel explaining that it was the legal owner of the Painting and demanding its return. Landau refused to comply, leaving Plaintiff with no other option but to seek relief from this Court.

## COUNT I
### (Breach of Contract)
### Against Defendant Doyle

38. Matthiesen Limited incorporates and realleges, as though fully set forth above, every allegation set forth in the preceding paragraphs of the Complaint.

39. Plaintiff and Doyle had a contract whereby Plaintiff agreed to sell the Painting for $550,000 to Doyle's client "Chris" with Doyle acting as the intermediary.

40. Plaintiff relinquished the Painting to Doyle for purposes of this agreement and fully performed its obligations under such contract.

41. Doyle breached that contract by not selling the Painting to Chris for $550,000 and not remitting $550,000 to Plaintiff.

42. Based upon the foregoing, Plaintiff is entitled to damages of $550,000.

## COUNT II
### (Fraud)
### Against Defendant Doyle

43. Matthiesen Limited incorporates and realleges, as though fully set forth above, every allegation set forth in the preceding paragraphs of the Complaint.

44. Doyle represented to Plaintiff that he would sell the Painting to the alleged purchaser "Chris" for $550,000 and forward the funds to Plaintiff.

45. Doyle knew that the representation was material and false. He intended Plaintiff to rely upon it to defraud Plaintiff.

46. Plaintiff reasonably relied upon the false representations made by Doyle to its detriment.

47. Consistent with those representations, Plaintiff sent Doyle an invoice and agreed to a sale of the Painting. Plaintiff never received any payment.

48. Doyle knew that he lacked title to the Painting because he obtained it by fraudulent means.

49. In furtherance of his fraudulent scheme, Doyle had the Painting delivered to Sarukhanishvili, who "consigned" or "sold" the Painting to Newhouse, who then "sold" it to Landau.

50. Upon information and belief, Doyle, through Sarukhanishvili, received $115,000, or some part thereof, from Newhouse in exchange for the Painting.

51. Doyle continued to lie to Plaintiff for months, making false representations regarding when Plaintiff would receive payment. Plaintiff reasonably relied upon these misrepresentations to its detriment because it delayed Plaintiff from discovering Doyle's scheme and seeking recovery of the Painting or the funds owed.

52. Because of Doyle, Plaintiff no longer has possession of the Painting nor was it compensated financially as promised by Doyle.

53. Based upon the foregoing, Plaintiff is entitled to the value of the Painting, believed to be at least $550,000, owed to it from its loss of the Painting.

54. Based upon the malicious and/or reckless nature of Doyle's conduct, Plaintiff is also entitled to punitive damages in an amount to be determined at trial.

55. Doyle is jointly and severally liable with Sarukhanishvili for fraud.

### COUNT III
**(Aiding and Abetting Fraud)**
**Against Defendant Sarukhanishvili**

56. Matthiesen Limited incorporates and realleges, as though fully set forth above, every allegation set forth in the preceding paragraphs of the Complaint.

57. Doyle committed fraud when he intentionally misrepresented that he had a purchaser named "Chris" who would pay $550,000 and that Plaintiff would receive the full amount.

58. Sarukhanishvili knew of this fraud because he was Doyle's business associate and knew that there was no purchaser "Chris." He knew that Doyle had no intention of sending Plaintiff the $550,000 it was owed for the Painting.

59. Sarukhanishvili provided Doyle with substantial assistance in effectuating the fraud. Upon information and belief, Doyle had the Painting delivered to Sarukhanishvili with the express understanding that Sarukhanishvili would "sell" the work on his behalf.

60. Sarukhanishvili further enacted the fraud by furnishing Newhouse with a false provenance (which Newhouse then submitted to the Art Loss Register), "selling" the Painting to Landau through Newhouse at a steeply discounted price, and retaining the funds for himself and Doyle.

61. Based upon the foregoing, Plaintiff is entitled to the value of the Painting, believed to be at least $550,000, owed to it from its loss of the Painting.

62. Based upon the malicious and/or reckless nature of Sarukhanishvili's conduct, Plaintiff is also entitled to punitive damages in an amount to be determined at trial.

63. Sarukhanishvili is jointly and severally liable with Doyle for fraud.

## COUNT IV
### (Conversion)
### Against All Defendants

64. Matthiesen Limited incorporates and realleges, as though fully set forth above, every allegation set forth in the preceding paragraphs of the Complaint.

65. The Painting is unique and valuable chattel.

66. Plaintiff is the lawful owner of the Painting and entitled to its immediate possession.

67. Plaintiff issued Doyle an invoice for the Painting but received no payment. Because Doyle fraudulently induced Plaintiff to "sell" and turn over the Painting to him, good title never passed to Doyle.

68. Every other subsequent possessor of the Painting acted in bad faith or with deliberate indifference, is not a good faith purchaser for value, and thus, did not acquire good title under the doctrine of voidable title.

69. Sarukhanishvili is not a good faith purchaser for value because he aided and abetted Doyle in his fraudulent scheme to obtain the Painting. Upon information and belief, Doyle had the Painting delivered to Sarukhanishvili with the express understanding that Sarukhanishvili would "sell" the work on his behalf. As detailed above, Sarukhanishvili was intimately involved in Doyle's project to defraud Plaintiff for years.

70. Upon information and belief, Sarukhanishvili specifically knew that Plaintiff was the owner of the Painting and that Doyle obtained it by fraudulent means and that Plaintiff was not paid for the Painting.

71. Sarukhanishvili "consigned" or "sold" the Painting to Newhouse under false pretenses and with a fabricated provenance.

72. Newhouse is not a good faith purchaser for value. Upon information and belief, Newhouse knew or should have known that the ownership of the Painting was fabricated. Ms. Jill Newhouse is an expert in the market of Old Master paintings, particularly 19th century French art such as the Painting. She was or should have been familiar with Plaintiff's ownership of the Painting and Plaintiff's efforts to sell it at a much higher price than what she paid Sarukhanishvili, especially as a work by the famed artist Gustave Courbet. Upon information and belief, she was aware that Landau saw the Painting for sale through Nicholas Hall Gallery for $650,000 in the summer of 2024.

73. Nevertheless, Newhouse received the Painting at a fire sale price, ignored numerous red flags, and then "sold" the Painting to Landau—knowing its provenance and price raised serious concerns.

74. Newhouse "sold" the Painting to Landau for less than a quarter of the price that the Painting had been previously offered to Landau when it was on consignment at Nicholas Hall Gallery.

75. Landau did not "purchase" the Painting in good faith for value. Upon information and belief, he knew or should have known that the sale of the Painting for less than a quarter of the price than when he viewed it on multiple previous occasions—the most recent being the

Case 1:25-cv-07975-VM   Document 1   Filed 09/25/25   Page 15 of 18

summer of 2024—raised serious red flags about what had happened to the Painting in the interim period.

76.     Upon information and belief, Doyle, Sarukhanishvili, Newhouse, and Landau converted the Painting with malice and/or reckless disregard of Plaintiff's claim of title.

77.     Based upon the foregoing, Plaintiff is entitled to the value of the Painting, believed to be at least $550,000, owed to it from its loss of the Painting.

## COUNT V
### (Civil Conspiracy to Commit Conversion)
### Against All Defendants

78.     Plaintiff incorporates and realleges, as though fully set forth above, every allegation set forth in the preceding paragraphs of the Complaint.

79.     Defendants conspired and agreed, without Plaintiff's knowledge, consent, or authorization, to convert the Painting.

80.     This conspiracy was in fact performed.

81.     Doyle and Sarukhanishvili took possession of the Painting under false pretenses and intentionally "sold" or "consigned" the Painting to Newhouse, knowing that they did not have legal title or the authorization from Plaintiff to do so. They did so in furtherance of Defendants' agreement to unlawfully take possession of the Painting from Plaintiff.

82.     Newhouse knew or should have known that Sarukhanishvili did not have legal title or authorization to sell the Painting based on the highly discounted price and Plaintiff's public ownership of the Painting for several years. Regardless, she "sold" the Painting to Landau in furtherance of Defendants' agreement to unlawfully take possession of the Painting from Plaintiff.

14

83. Landau knew or should have known that Newhouse did not have legal title nor authorization to sell the Painting.  He had viewed the Painting multiple times at multiple locations over the course of several years where its retail price was $650,000 or more.  Regardless, Landau "purchased" the Painting from Newhouse in furtherance of Defendants' agreement to unlawfully take possession of the Painting from Plaintiff.

84. Plaintiff has been damaged by Defendants' conspiracy to commit conversion because it no longer has possession of the Painting and was not compensated for the value of the Painting.

85. Defendants are jointly and severally liable for their conversion of the Painting.

### COUNT VI
### (Replevin)
### Against Defendant Landau

86. Plaintiff incorporates and realleges, as though fully set forth above, every allegation set forth in the preceding paragraphs of the Complaint.

87. Plaintiff is the owner of the Painting and is entitled to its return.

88. Plaintiff has demanded the return of the Painting, but Landau has refused to comply and would not confirm the Painting's location.  However, upon information and belief, Landau still has possession, custody, or control of the Painting.  His possession, custody, or control of the Painting is wrongful.

89. By reason of the foregoing, Plaintiff is entitled to the immediate return of the Painting.

**PRAYER FOR RELIEF**

WHEREFORE, Matthiesen Limited demands judgment against Defendants Thomas Austin Doyle, Shalva Sarukhanishvili, Jill Newhouse LLC, and Jon Landau, who are jointly and severally liable, as follows:

(a) As to Landau directing the immediate return of the Painting to Plaintiff in the same condition that it left Plaintiff's custody and possession;

(b) Alternatively, if the Painting cannot be returned in the condition it left Plaintiff's custody and possession, then awarding Plaintiff damages of at least $550,000 as compensation for Defendants' conversion of the Painting and conspiracy to commit conversion;

(c) Such other and further relief as the Court deems just and proper, including an award of costs and reasonable attorneys' fees owing to Plaintiff.

WHEREFORE, Matthiesen Limited demands judgment against Defendants Thomas Austin Doyle and Shalva Sarukhanishvili, who are jointly and severally liable for fraud, as follows:

(a) Awarding Plaintiff compensatory damages of at least $550,000 to be determined at trial;

(b) Awarding Plaintiff punitive damages in an amount to be determined at trial;

(c) Such other and further relief as the Court deems just and proper, including an award of costs and reasonable attorneys' fees owing to Plaintiff.

WHEREFORE, Matthiesen Limited demands judgment against Defendant Thomas Austin Doyle for breach of contract as follows:

(a) Awarding Plaintiff compensatory damages of at least $550,000 to be determined at trial;

(b) Such other and further relief as the Court deems just and proper, including an award of costs and reasonable attorneys' fees owing to Plaintiff.

Dated: New York, New York
September 25, 2025

SCHINDLER COHEN & HOCHMAN LLP

By: _____
Steven R. Schindler
Katherine Wilson-Milne
Aaron Haines
100 Wall Street, 15th Floor
New York, NY 10005
(212) 277-6300
(212) 277-6333 (fax)

*Attorneys for Plaintiff Matthiesen Limited*